# EXHIBIT 1

## AFFIDAVIT OF DERRICK WHITE

I, Derrick White, being first duly sworn, make the following Affidavit:

1. I, DERRICK WHITE, make this Affidavit based upon my personal knowledge and I am competent to testify to the facts contained herein.

2. I have been employed by the Michigan State Police for 22 years and currently hold the rank of Detective Lieutenant.

3. I am the Team Commander for the Jackson Narcotics Enforcement Team ("JNET").

4. In my capacity as JNET Team Commander, I am familiar with the interlocal agreements which established JNET under the Urban Cooperation Act, MCL 124.501 *et seq.*

5. JNET was established in 1998 by the Michigan Department of State Police, Jackson County, and the City of Jackson. These entities entered into an interlocal agreement in 2002 (Ex. A).

6. In 2014, the Michigan Department of State Police, Jackson County, and the City of Jackson entered into a second interlocal agreement establishing JNET (Ex. B).

7. The 2002 interlocal agreement automatically renewed each year until it was replaced by the 2014 interlocal agreement.

8. Beginning in 2014, the Michigan Department of State Police, Jackson County, and the City of Jackson entered into a successive annual interlocal agreements establishing JNET.

9. In all of the interlocal agreements, the participating entities expressly state that these interlocal agreements do not create separate legal or administrative entities.

I DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.

_____
Derrick White


_____
Notary Public

__Jackson__ County, MI

My Commission Expires: 11/17/21

Acting in __Jackson__ County, MI

CRYSTAL GALLAGHER
NOTARY PUBLIC, Jackson County, MI
My Commission Expires Nov. 17, 2021
Acting in Jackson County

# EXHIBIT A

# INTERLOCAL AGREEMENT
## Jackson Narcotics Enforcement Team (J.N.E.T.)

WHEREAS, the participating entities the Michigan Department of State Police, Jackson County, City of Jackson, and Blackman Township, enter into this agreement pursuant to the Urban Cooperation Act, MCL 124.501 et seq.;

WHEREAS, the participating entities are desirous of establishing a cooperative task force by combining their investigative services, manpower, and/or resources for the purpose of enforcing narcotic and/or controlled substance laws and deterring related criminal activity; and

WHEREAS, the participating entities do not intend by this agreement to establish this task force or its command board as a separate legal or administrative entity under Section 7 (1) of the Urban Cooperation Act, MCL 124.507 (1) and have not therefore provided for or otherwise established such an entity by the terms of this agreement.

THEREFORE, in consideration of the mutual interest, obligations and promises herein contained, the participating entities hereto agree as follows:

## ARTICLE I
## OPERATIONAL PROCEDURES AND GUIDELINES

I. PURPOSE

The participating entities enter into this agreement to create the Jackson Narcotics Enforcement Team (JNET) for the purpose of combining their efforts toward the enforcement of narcotic and controlled substance laws in the State of Michigan.

II. COMMAND BOARD

A Command Board shall be formed which will consist of the administrative heads, or their representatives, of the police agencies of the participating entities contributing law enforcement personnel to JNET, or meeting obligations of a participating entity, as established in the bylaws, and the Prosecuting Attorney from Jackson county. The Command Board shall meet on matters concerning the day to day operations of the team. A quorum shall consist of a simple majority of the members present and voting.

III. OPERATION POLICIES AND PROCEDURES

The Command Board shall adopt by-laws for the operational policies and procedures to be implemented and followed by JNET.

IV. PERSONNEL AND COMPENSATION

All participating entities shall maintain at least one (1) full time police officer assigned to exclusively work in drug law enforcement with JNET or, pursuant to the bylaws, a participating police entity may remain a member of JNET by payment of an annual contribution as specified by the Command Board on an annual basis.

Each law enforcement officer assigned to JNET by his/her participating entity's police agency shall remain an agent of that participating entity's police agency. Said participating entity and

officers assigned to JNET agree to conform to all operating procedures established by MSP, Southeastern Criminal Investigative Division Policy Book, specifically including but not limited to, the handling of narcotic cases, confidential informants, evidence, and forfeiture procedures.

Personnel costs for sworn law enforcement officers assigned to JNET, including wages, overtime, insurance, and other fringe benefits shall be provided for and paid by the participating entity supplying such personnel. The exception would be those personnel funded through grants and/or other funding sources.

## V. COMMANDER

The Michigan Department of State Police shall appoint a JNET Commander who shall have the authority, as designated by the Department of State Police and the Command Board, to coordinate the operation of JNET. The Commander will arrange for the training of participating police personnel, for the control and accounting of expenditures and property, and for the filing of a monthly report of JNET activity at each Command Board meeting.

## VI. LIABILITY AND INSURANCE

Liability insurance and/or legal representation in civil suits for alleged tortious conduct and/or civil rights violations against the personnel of a participating entity on JNET, a participating entity, and/or a participating entity's representative on the Command Board is the individual responsibility of each participating entity and a participating entity may provide liability insurance and/or legal representation for itself, for its personnel on JNET and/or for its representative on the Command Board.

A judgment for actual and/or punitive damages resulting from a finding of tortious conduct or violation of civil rights, against a participating entity's personnel, a participating entity itself and/or a participating entity's representative on the Command Board, may be paid by the participating entity which supplied the personnel against whom a judgment entered and/or which appointed the representative against whom a judgment entered. No participating entity, JNET personnel or Command Board representative is liable for or required to satisfy a judgment against another participating entity, that entity's personnel on JNET or that entity's representative on the Command Board. Further, JNET shall not indemnify assigned personnel, a participating entity, or its appointed representative to the Command Board for any claim or judgement referred to herein.

## VII. JURISDICTION

Any duly sworn police officer, while assigned to JNET and while working in furtherance of the purposes and activities of JNET, shall have the same powers, duties, privileges and immunities as are conferred upon him/her as a police officer in his/her own jurisdiction, and in any jurisdiction within the State.

# ARTICLE II
## FORFEITURE PROCEDURES AND DISPOSITION OF PROPERTY SEIZED

### I. FORFEITURES PURSUANT TO THE CONTROLLED SUBSTANCE ACT

All property seized by JNET pursuant to MCL 333.7521 et seq., as amended, shall be maintained and handled pursuant to Michigan State Police guidelines under Michigan State Police Department policies, and will be recorded on the prescribed MSP forms. Property will be controlled, inspected, and disposed of according to MSP procedures.

When property is seized pursuant to said forfeiture act, an officer assigned to JNET seizing the property shall use the standard Michigan State Police Narcotics Forfeiture Forms. The Michigan State Police will be the Quartermaster and custodian of all property seized by JNET and will receive and maintain said seized property under MSP policies.

In the event that property seized by JNET is subsequently forfeited to the Command Board, the property will be disposed of in accordance with MCL 333.7524. All property forfeited to the Command Board and the proceeds from the sale of said property, shall be used to enhance law enforcement efforts pertaining to the Controlled Substance Act.

In the event that it is necessary to file judicial forfeiture proceedings, the Jackson County Prosecutor's office or the Michigan Attorney General's Office shall file forfeiture proceedings for property seized by JNET. Said forfeiture proceedings shall be instituted in the name of the Jackson County Prosecuting Attorney or Michigan Attorney General's Office.

The Jackson County Prosecuting Attorney or Michigan Attorney General, by and through his/her designated assistant prosecuting attorney, working in conjunction with the JNET Commander, shall have the authority to establish sale prices, negotiate real estate transactions, accept bids, make counter-offers, sign deeds and other documents associated with the sale of real estate forfeited to the Command Board.

### II. CUSTODIAN OF SEIZED AND FORFEITED MONIES AND PROPERTY

The County of Jackson shall be the custodian of all seized and forfeited monies for purposes stated under MCL 333.7524. All such money received by the County of Jackson shall be placed in a "Drug Law Enforcement Fund 265 Account." The County shall establish two such accounts: (1) A "Pending" non-adjudicated forfeiture account in which shall be placed all seized (except evidence) monies prior to settlement or judicial adjudication. Monies shall not be disbursed from said "Pending" account unless the County receives an Administrative Order (Declaration of Administrative Forfeiture), a Stipulation of Out-of-Court Settlement, a Judgment of Forfeiture, or a Court Order authorizing the release of said monies; (2) A "Revenue" account which shall contain forfeited monies, proceeds from the sales of forfeited real and personal property, a court ordered restitution receipts, and any other miscellaneous income received by JNET or the Command Board.

Property forfeited to the Command Board and used by JNET to enhance drug law enforcement shall be inventoried and otherwise accounted for by the JNET Commander on an annual basis.

All existing funds and/or property in the possession of JNET shall be transferred and utilized pursuant to and in accordance with the terms of this Agreement.

### III. DUTIES AND FUNCTIONS OF THE COUNTY OF JACKSON

The County of Jackson shall perform those functions and exercise those powers and responsibilities set forth at MCL 333.7524 and is to receive funds obtained pursuant to MCL 333.7524, but only for the purposes specified under this agreement.

The County of Jackson, as the custodian of the seized and forfeited funds and property, shall comply with the terms of MCL 333.7524a with respect to the annual reports and audits required under that statute which pertain to the receipt and disbursement of forfeited property. Audit findings shall be submitted to each of the participating entities under this agreement.

JNET shall also prepare and submit to each participating entity under this agreement, at the beginning of each fiscal year, a proposed line item budget. The proposed budget shall include proposed allocation in response to requests for drug law enforcement support from each participating entity. This budget shall be adopted by the County of Jackson no later than December each year and submit the same to the participating entities for informational purposes.

Not withstanding any contrary provision, the Command Board, with the approval of the County of Jackson, is to adopt a budget, which provides for the payment of appropriated expenses from the drug forfeiture property received pursuant to MCL 333.7524 prior to the expenditure of monies.

Payments for the budgeted or appropriated expenses shall be made after receipt of appropriate documentation verifying the expenditures.

## ARTICLE III
## WITHDRAWAL; TERMINATION

I. WITHDRAWAL FROM AGREEMENT

Any participating entity may withdraw from this agreement by providing not less than thirty (30) days prior written notice to each of the participating entities. The agreement may be terminated by joint action of all the participating entities at any time.

II. DISTRIBUTION OF FORFEITURE ASSETS UPON WITHDRAWAL

In the event that any participating entity withdraws from this agreement, any assets which have been retained by the County of Jackson/JNET remain in the custody of the County/JNET and shall be disposed of as provided in the bylaws and in accordance with MCL 333.7524.

III. DISTRIBUTION OF FORFEITURE ASSETS UPON TERMINATION

In the event of a complete termination of this agreement, any remaining assets shall be distributed to each of the participating entities. That distribution shall be proportionate to the number of full-time employee positions allocated, excluding grant funded positions, plus the proportionate amount of funds provided, if any, to the cooperative drug law enforcement effort in the preceding twenty-four (24) months by participating entities.

IV. Revocation of Prior Agreements:
This agreement rescinds all previous agreements.

Date: 12/13/N _SAlledd_ | Michigan Department of State Police
By Director: _SMala_
Michigan State Police

Date: 10-4-02 | Jackson County
By Chairman: _James E Rice_
Jackson County Board of Commissioners

Date: 10-22-02 | City of Jackson
By Mayor: _Marty Griffin_
Jackson City Commissioners

Date: 10/3/02 | Blackman Township
By Chairman: _L. R. Bowman_
Blackman Township Board of Commissioners

Although the county sheriff(s), county prosecutor(s) and local police chief(s) are not parties to the agreement and aren't required to sign the agreement, they may sign as acknowledgement of their role as described in the agreement.

Date: 10/3/02 | Jackson County Sheriff Department
_H. Zavislak_
By Sheriff Henry Zavislak,
Jackson County Sheriff's Department

Date: 10-15-02 | City of Jackson Police Department
_Ervin Portis_
By Chief of Police Ervin Portis,
Jackson City Police Department

Date: 10-23-02 | Jackson County Prosecutor Office
_John McBain_
By Prosecutor John McBain,
Jackson County Prosecutor's Office

Date: 10/2/02 | Township of Blackman Public Safety Dept.
_Thomas Finco_
By Director Thomas Finco,
Blackman Public Safety Dept.

# EXHIBIT B

# INTERLOCAL AGREEMENT
## Jackson Narcotics Enforcement Team (J.N.E.T.)

WHEREAS, the participating entities the Michigan Department of State Police, Jackson County, City of Jackson, and Township of Blackman, enter into this agreement pursuant to the Urban Cooperation Act, MCL 124.501 et seq.;

WHEREAS, the participating entities are desirous of establishing a cooperative task force by combining their investigative services, manpower, and/or resources for the purpose of enforcing narcotic and/or controlled substance laws and deterring related criminal activity; and

WHEREAS, the participating entities do not intend by this agreement to establish this task force or its command board as a separate legal or administrative entity under Section 7 (1) of the Urban Cooperation Act, MCL 124.507 (1) and have not therefore provided for or otherwise established such an entity by the terms of this agreement.

THEREFORE, in consideration of the mutual interest, obligations and promises herein contained, the participating entities hereto agree as follows:

## ARTICLE I

## OPERATIONAL PROCEDURES AND GUIDELINES

I. PURPOSE

The participating entities enter into this agreement to create the Jackson Narcotics Enforcement Team (JNET) for the purpose of combining their efforts toward the enforcement of narcotic and controlled substance laws in the State of Michigan.

II. COMMAND BOARD

A Command Board shall be formed which will consist of the administrative heads, or their representatives, of the police agencies of the participating entities contributing law enforcement personnel to JNET, or meeting obligations of a participating entity, as established in the bylaws, and the Prosecuting Attorney from Jackson county. The Command Board shall meet on matters concerning the day to day operations of the team. A quorum shall consist of a simple majority of the members present and voting.

III. OPERATION POLICIES AND PROCEDURES

The Command Board shall adopt by-laws for the operational policies and procedures to be implemented and followed by JNET.

IV. PERSONNEL AND COMPENSATION

All participating entities shall maintain at least one (1) full time police officer assigned to exclusively work in drug law enforcement with JNET or, pursuant to the bylaws; a participating police entity may remain a member of JNET by payment of an annual contribution as specified by the Command Board on an annual basis.

Each law enforcement officer assigned to JNET by his/her participating entity's police agency shall remain an agent of that participating entity's police agency. Said participating entity and officers assigned to JNET agree to conform to all operating procedures established by MSP, East Region, First District Policy, specifically including but not limited to, the handling of narcotic cases, confidential informants, evidence, and forfeiture procedures.

Personnel costs for sworn law enforcement officers assigned to JNET, including wages, overtime, insurance, and other fringe benefits shall be provided for and paid by the participating entity supplying such personnel. The exception would be those personnel funded through grants and/or other funding sources.

V. COMMANDER

The Michigan Department of State Police shall appoint a JNET Commander who shall have the authority, as designated by the Department of State Police and the Command Board, to coordinate the operation of JNET. The Commander will arrange for the training of participating police personnel, for the control and accounting of expenditures and property, and for the filing of a monthly report of JNET activity at each Command Board meeting.

VI. LIABILITY AND INSURANCE

Liability insurance and/or legal representation in civil suits for alleged tortious conduct and/or civil rights violations against the personnel of a participating entity on JNET, a participating entity, and/or a participating entity's representative on the Command Board is the individual responsibility of each participating entity and a participating entity may provide liability insurance and/or legal representation for itself, for its personnel on JNET and/or for its representative on the Command Board.

A judgment for actual and/or punitive damages resulting from a finding of tortious conduct or violation of civil rights, against a participating entity's personnel, a participating entity itself and/or a participating entity's representative on the Command Board, may be paid by the participating entity which supplied the personnel against whom a judgment entered and/or which appointed the representative against whom a judgment entered  No participating entity, JNET personnel or Command Board representative is liable for or required to satisfy a judgment against another participating entity, that entity's personnel on JNET or that entity's representative on the Command Board. Further, JNET shall not indemnify assigned personnel, a participating entity, or its appointed representative to the Command Board for any claim or judgment referred to herein.

VII. JURISDICTION

Any duly sworn police officer, while assigned to JNET and while working in furtherance of the purposes and activities of JNET, shall have the same powers, duties, privileges and immunities as are conferred upon him/her as a police officer in his/her own jurisdiction, and in any jurisdiction within the State.

## ARTICLE II
## FORFEITURE PROCEDURES AND DISPOSITION OF PROPERTY SEIZED

I. FORFEITURES PURSUANT TO THE CONTROLLED SUBSTANCE ACT

All property seized by JNET pursuant to MCL 333.7521 et seq., as amended, shall be maintained and handled pursuant to Michigan State Police guidelines under Michigan State Police Department policies, and will be recorded on the prescribed MSP forms. Property will be controlled, inspected, and disposed of according to MSP procedures.

When property is seized pursuant to said forfeiture act, an officer assigned to JNET seizing the property shall use the standard Michigan State Police Narcotics Forfeiture Forms. The Michigan State Police will be the Quartermaster and custodian of all property seized by JNET and will receive and maintain said seized property under MSP policies.

In the event that property seized by JNET is subsequently forfeited to the Command Board, the property will be disposed of in accordance with MCL 333.7524. All property forfeited to the Command Board and the proceeds from the sale of said property shall be used to enhance law enforcement efforts pertaining to the Controlled Substance Act.

In the event that it is necessary to file judicial forfeiture proceedings, the Jackson County Prosecutor's office or the Michigan Attorney General's Office shall file forfeiture proceedings for property seized by JNET. Said forfeiture proceedings shall be instituted in the name of the Jackson County Prosecuting Attorney or Michigan Attorney General's Office.

The Jackson County Prosecuting Attorney or Michigan Attorney General, by and through his/her designated assistant prosecuting attorney, working in conjunction with the JNET Commander, shall have the authority to establish sale prices, negotiate real estate transactions, accept bids, make counter-offers, sign deeds and other documents associated with the sale of real estate forfeited to the Command Board.

II. CUSTODIAN OF SEIZED AND FORFEITED MONIES AND PROPERTY

The County of Jackson shall be the custodian of all seized and forfeited monies for purposes stated under MCL 333.7524. All such money received by the County of Jackson shall be placed in a "Drug Law Enforcement Fund 265 Account." The County shall establish two such accounts: (1) A "Pending" non-adjudicated forfeiture account in which shall be placed all seized (except evidence) monies prior to settlement or judicial adjudication. Monies shall not be disbursed from said "Pending" account unless the County receives an Administrative Order (Declaration of Administrative Forfeiture), a Stipulation of Out-of-Court Settlement, a Judgment of Forfeiture, or a Court Order authorizing the release of said monies; (2) A "Revenue" account which shall contain forfeited monies, proceeds from the sales of forfeited real and personal property, a court ordered restitution receipts, and any other miscellaneous income received by JNET or the Command Board.

Property forfeited to the Command Board and used by JNET to enhance drug law enforcement shall be inventoried and otherwise accounted for by the JNET Commander on an annual basis.

All existing funds and/or property in the possession of JNET shall be transferred and utilized pursuant to and in accordance with the terms of this Agreement.

III. DUTIES AND FUNCTIONS OF THE COUNTY OF JACKSON

The County of Jackson shall perform those functions and exercise those powers and a responsibility set forth at MCL 333.7524 and is to receive funds obtained pursuant to MCL 333.7524, but only for the purposes specified under this agreement.

The County of Jackson, as the custodian of the seized and forfeited funds and property, shall comply with the terms of MCL 333.7524a with respect to the annual reports and audits required under that statute which pertain to the receipt and disbursement of forfeited property. Audit findings shall be submitted to each of the participating entities under this agreement.

JNET shall also prepare and submit to each participating entity under this agreement, at the beginning of each fiscal year, a proposed line item budget. The proposed budget shall include proposed allocation in response to requests for drug law enforcement support from each participating entity. This budget shall be adopted by the County of Jackson no later than December each year and submit the same to the participating entities for informational purposes.

Not withstanding any contrary provision, the County of Jackson, with the approval of the Board of Control, is to adopt a budget, which provides for the payment of appropriated expenses from the drug forfeiture property received pursuant to MCL 333.7524 prior to the expenditure of monies.

Payments for the budgeted or appropriated expenses shall be made after receipt of appropriate documentation verifying the expenditures.

# ARTICLE III

## WITHDRAWAL; TERMINATION

I. WITHDRAWAL FROM AGREEMENT

Any participating entity may withdraw from this agreement by providing not less than thirty (30) days prior written notice to each of the participating entities. The agreement may be terminated by joint action of all the participating entities at any time.

II. DISTRIBUTION OF FORFEITURE ASSETS UPON WITHDRAWAL

In the event that any participating entity withdraws from this agreement, any assets which have been retained by the County of Jackson/JNET remain in the custody of the County/JNET and shall be disposed of as provided in the bylaws and in accordance with MCL 333.7524.

III. DISTRIBUTION OF FORFEITURE ASSETS UPON TERMINATION

In the event of a complete termination of this agreement, any remaining assets shall be distributed to each of the participating entities. That distribution shall be proportionate to the number of full-time employee positions allocated, excluding grant funded positions, plus the proportionate amount of funds provided, if any, to the cooperative drug law enforcement effort in the preceding twenty-four (24) months by participating entities.

IV. Revocation of Prior Agreements:
This agreement rescinds all previous agreements.

Date: 12-15-14

_____
CAPT. Kevin P. McHepfrein [signature]
Michigan Department of State Police

Date: _____

_____
Jackson County Board of Commissioners

Date: _____

_____
Mayor, City of Jackson

Date: _____

_____
Supervisor, Blackman Township

Although the county sheriff(s), county prosecutor(s) and local police chief(s) are not parties to the agreement and aren't required to sign the agreement, they may sign as acknowledgement of their role as described in the agreement.

Date: 12-9-14

_____
Jackson County Sheriff Department

Date: 12-17-14

_____
City of Jackson Police Department

Date: 12-9-14

_____
Jackson County Prosecutor

Date: _____

_____
Township of Blackman Public
Safety Department