UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL TREVINO,

    Plaintiff,

v.                                                                 Case No. 16-14338

MICHAEL TEACHOUT, JACKSON
NARCOTICS ENFORCEMENT TEAM,
AMY BRETES, and CRAIG
EDMONDSON,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Daniel Trevino brought this case under 42 U.S.C. § 1983. (Dkt. #4.) Two of the four original defendants, the Jackson Narcotics Enforcement Team ("JNET") and Craig Edmondson, have been dismissed. (Dkt. #42, 55.) The two remaining defendants, Michael Teachout and Amy Bretes, each face a claim of unlawful seizure of Plaintiff's personal property in violation of his Fourth Amendment rights. (Dkt. #4.) One count is based on a seizure that took place on December 13, 2013 by Defendant Michael Teachout. (*Id.*) The other is based on a July 3, 2014 seizure by Defendant Amy Bretes. (*Id.*) Pending before the court are motions for summary judgment filed by Defendants Teachout and Bretes. (Dkt. #48, 50.) Plaintiff filed a consolidated response (Dkt. #56), and Defendants filed replies. (Dkt. #57, 59.) The court heard argument on the motions on October 31, 2018. For the reasons stated below, the court will grant both Defendants' motions for summary judgment.

## I. BACKGROUND

The following facts are entirely undisputed. Plaintiff Daniel Trevino owned a medical marijuana business ("Hydroworld") located at 800 Wildwood in Jackson, Michigan. (Dkt. #4; Dkt. #56, PageID 690.) Hydroworld was under investigation by JNET as a marijuana dispensary. (Dkt. #48, PageID 490.) Defendant Amy Bretes, a Jackson County Sheriff's Deputy, and Defendant Michael Teachout, a Michigan State Police trooper, both served on JNET during the events involved in this case. (Dkt. #4, 14, 18.) Multiple searches were conducted of this Hydroworld location between 2013 and 2015, two of which are the basis of Plaintiff's claims here. (Dkt. #50-1, PageID 626.)

### A. First Incident

The first relevant incident took place on December 13, 2013, when Defendant Teachout obtained and executed a search warrant for 800 Wildwood. (Dkt. #4, PageID 14–15.) The search warrant was supported by an affidavit by Defendant Teachout and covered any vehicles, buildings, and persons on the premises. (Dkt. #50-3, PageID 635.) It specifically included among the items to be seized marijuana, items related to its sale, money received in exchange for it, paper records, and vehicles on the premises. (*Id.*) In executing this warrant, Defendant Teachout seized a total of $4,420 in cash and various documents related to the medical marijuana business. (Dkt. #4, PageID 14–15.) A tabulation of the property seized was left on location at the time, which Plaintiff stated he probably gave to his attorney. (Dkt. #50-1, PageID 628.)

Plaintiff apparently did not receive the Notice of Seizure and Intent to Forfeit dated January 10, 2014 until May 9, 2018 due to a technological error. (Dkt. #56, PageID 691.) Plaintiff asserts that he signed a claim for the seized property but

concedes that neither he nor JNET has any receipt or record indicating that JNET received the claim. (*Id.*) The property was eventually forfeited and disposed of. (*Id.*)

### B. Second Incident

The second incident pertaining to this case occurred on July 3, 2014, when Plaintiff and another individual were stopped by City of Jackson Police Officer Craig Edmondson at 800 Wildwood. (Dkt. #48, PageID 488.) Officer Edmondson smelled marijuana, found a wad of $2,036 in cash in Plaintiff's pocket in individual plastic baggies during a pat-down, and found a small bag containing suspected marijuana. (*Id.*, PageID 490, 493.) Sometime after this occurred, Defendant Amy Bretes responded to the scene with another detective. (*Id.*, PageID 490.) She conducted a search of the vehicle identified by Officer Edmondson as the subject of his investigation and took possession of the cash and suspected marijuana seized earlier by him, as well as several cell phones from Plaintiff and his companion. (Dkt. #14, PageID 104; Dkt. #48, PageID 492.)

According to Defendant Bretes, the property seized was placed into evidence and the currency deposited into JNET's adjudicated account. (Dkt. #48, PageID 493.) A civil forfeiture action regarding the money was initiated by the Jackson County Prosecuting Attorney's office. (*Id.*) The Jackson Circuit Court held a bench trial and involuntarily dismissed the case, directing Plaintiff to receive the $2,036. *See In re Forfeiture of $2,036*, 2018 WL 1936192 (Mich. Ct. App. Apr. 24, 2018) (Dkt. #49-1.) This decision was appealed, and the Michigan Court of Appeals reversed and remanded the matter to the trial court, where it currently is pending. (*Id.*)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The evidence, and all reasonable inferences drawn from it, must be considered in the light most favorable to the opposing party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party, who must set forth enough evidence to raise at least a genuine issue of material fact for trial. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex Corp.*, 477 U.S. at 324). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248. A "mere 'scintilla' of evidence in support of the nonmoving party's position is insufficient to defeat summary judgment." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251).

## III. DISCUSSION

Plaintiff brought this suit under 42 U.S.C. § 1983, asserting Defendants violated his Fourth Amendment rights by seizing money, marijuana, and other items without probable cause. (Dkt. #4, PageID 14–17, 24.) Defendants move for summary judgment based on qualified immunity or, alternatively, for a stay of the proceedings under the *Younger* doctrine while related state litigation is pending. (Dkt. #48, PageID 507–09.) The court will consider each argument in turn.

### A. Qualified Immunity for § 1983 Unlawful Seizure Claims

Police officers, as government officials performing discretionary functions, may plead qualified immunity in suits for damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 815 (1982) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). This affirmative defense shields them from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818 (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). When this defense is raised, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

To defeat Defendants' claims of qualified immunity, then, Plaintiff must show that each Defendant violated a clearly established constitutional right at the time of the relevant incident. *Godawa v. Byrd*, 798 F.3d 457, 467 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts must "examine the asserted right at a relatively high level of specificity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011)

(internal citation omitted). That is, "'the right's contours were sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *City of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2015)).

Plaintiff alleges his Fourth Amendment rights were violated by unlawful seizures of his property. For a seizure to be valid, "[a]n officer must have probable cause to believe that items seized during a search are evidence of a crime." *United States v. Rigsby*, 943 F.2d 631, 637 (citing *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987)). "Probable cause is defined as a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1984 Cadillac*, 888 F.2d 1133, 1135 (6th Cir. 1989) (internal citations and quotation marks omitted). The ultimate question for the qualified immunity analysis here is whether, based on the undisputed facts viewed in the light most favorable to Plaintiff, Defendants acted in a way that clearly violated Plaintiff's sufficiently defined constitutional right to be free from unlawful seizures. Specifically, the question is whether reasonably competent officers could debate that each Defendant had probable cause that illegal activity was afoot at the time they seized the items in question.

### 1. Defendant Teachout

Plaintiff argues that Defendant Teachout did not have probable cause to seize his property on December 13, 2013. (Dkt. #56, PageID 697.) Yet Plaintiff states that he "is not challenging the probable cause to obtain the search warrant," and "does not

6

challenge Defendant Teachout's ability to be inside 800 Wildwood on December 13, 2013." (*Id.*, PageID 702–03.) Rather, Plaintiff asserts that "a sufficiently supported search warrant affidavit does not automatically justify a seizure," and that "the object seized must be an 'article of incriminating character.'" (*Id.*, PageID 703.) Plaintiff's claim is that the items seized were outside the scope of the warrant and not apparently incriminating because of Defendant's prior knowledge of Hydroworld's legitimate operations dispensing medical marijuana. (*Id.*, PageID 703, 708.)

This argument fails. Qualified immunity is based on an objective analysis, and the manufacture and sale of marijuana was illegal in Michigan at the time in question, despite the Michigan Medical Marihuana Act. *See People v. Brown*, 297 Mich. App. 670, 677 (2012) ("The possession, manufacture, use, creation, and delivery of marijuana remain illegal in this state, even after the enactment of the MMMA."). Defendant did not violate a clearly established constitutional right by seizing marijuana-related items in execution of the valid search warrant that described the same. (Dkt. #50-3.) Therefore, he is entitled to qualified immunity. As far as the forfeiture of the property seized, Plaintiff does not put forth a legal argument separate from the failed one above and further concedes that he lacks evidence supporting his factual allegations. Thus, Defendant is also entitled to qualified immunity on this claim.

## 2. Defendant Bretes

Plaintiff's claim against Defendant Bretes is that she "exploited the illegalities of Defendant Edmondson." (Dkt. #56, PageID 714.) The argument focuses on Officer Edmondson's actions, such as the illegal dumping explanation for stopping Plaintiff, and the officers' prior knowledge of Plaintiff's connection with 800 Wildwood. Defendant

7

Bretes, however, arrived after the stop had occurred and Officer Edmondson had already located marijuana and cash. Plaintiff contests that the presence of the marijuana and cash justified a seizure but, as noted above, marijuana was still illegal in Michigan even if a person had a medical marijuana card. Since, at a minimum, reasonably competent officers could debate whether Defendant Bretes had probable cause to seize and forfeit the marijuana and cash, she too is entitled to qualified immunity.

## B. *Younger* Abstention

The *Younger* doctrine "permits federal courts to withhold authorized jurisdiction in certain circumstances to avoid undue interference with state court proceedings." *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017) (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). As a matter of federalism, federal courts generally should not enjoin state court proceedings or "unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44. Abstention, however, "is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (internal citation omitted). It applies only in "exceptional" circumstances. (*Id.*) Indeed, "generally federal courts should not abstain from exercising jurisdiction on abstention grounds, for abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

The Sixth Circuit has found *Younger* applied in cases involving state civil forfeiture proceedings when a federal court proceeding could in some way impact the

related state court case. *See, e.g., Loch*, 337 F.3d 574; *Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017). The court has noted that "[t]he purpose of Younger abstention is to . . . allow state officials to proceed with cases uninterrupted by the federal courts." *Univ. of Ky.*, 860 F.3d at 372. While in some cases a federal court ruling on qualified immunity might affect ongoing state litigation, that is not necessarily so.

Here, Defendants argue that the court could stay these proceedings while Plaintiff's state civil forfeiture action remains pending. (Dkt. #48, PageID 488.) The forfeiture action regards the $2,036 that Plaintiff claims was unlawfully seized by Defendant Bretes. (*Id.*, PageID 494–96.) The court need not abstain from granting summary judgment based on qualified immunity, however, because that determination could in no way impact the forfeiture action. Qualified immunity turns on whether a reasonable officer would have known that he violated a constitutional right by his actions. It does not require the court to address the actual constitutionality of the specific acts above.

Defendant Teachout also made a *Younger* argument based on a petition for return of property Plaintiff filed in state court on June 5, 2018. (Dkt. #50, PageID 619; Dkt. #50-4.) For abstention to be appropriate, "the state proceeding must be pending on the day the plaintiff sues in federal court." *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (citing *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991)). *Younger* does not apply to the petition for return of property because it was filed approximately one and a half years after this case was filed. (Dkt. #1.)

## IV. CONCLUSION

Defendants Bretes and Teachout are entitled to summary judgment because Plaintiff has failed to raise a genuine issue of material fact regarding whether either is entitled to qualified immunity. Abstention is not required because this case does not implicate *Younger* concerns. Accordingly,

IT IS ORDERED that Defendant Bretes' motion for summary judgment (Dkt. #48) and Defendant Teachout's motion for summary judgment (Dkt. 50) are GRANTED.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: November 5, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 5, 2018, by electronic and/or ordinary mail.

                                                s/Lisa Wagner
                                                Case Manager and Deputy Clerk
                                                (810) 292-6522

S:\Cleland\Cleland\KMM\CIVIL\16-14338.TREVINO.GrantSJ.docx